IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BROOKE CREDIT CORPORATION,

    Plaintiff,

vs.

Case No. 06-1367-JTM

TEXAS AMERICAN INSURERS, INC., *et. al.*,

    Defendants.

MEMORANDUM AND ORDER

    Defendant, Texas American Insurers, Inc. ("TAI"), filed the present motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer to the United States District Court for the Northern District of Texas. For the following reasons, the court denies defendant's motion.

*I. Factual Background*:

    Plaintiff, Brooke Credit Corporation, is a Kansas corporation with its principal place of business in Overland, Park, Kansas. The corporation conducts its business in Phillips County, Kansas. Originally, the plaintiff commenced its action in the District Court for Phillips County, Kansas on November 14, 2006, against defendants Red Oak Financial Services, Inc.("Red Oak"), Robert W. Shannon, Jan L. Shannon, Robert F. Shannon, Darla S. Shannon, and TAI. The case was removed to this court on December 11, 2006. All defendants, except for TAI, filed for

protection under Chapter 7 of the United States Bankruptcy Code and are therefore, subject to the automatic stay.

The remaining defendant, TAI, is a Texas corporation with its principal place of business in Fort Worth, Texas. TAI operates as an insurance agency that employs Robert F. Shannon and Robert W. Shannon as insurance agents. Plaintiff alleges, in its Motion For Leave to File First Amended Complaint, Dkt. 8 and its corresponding First Amended Complaint, Dkt. 8, Exhibit 2:

> TAI has committed torts against, and conspired to commit torts against Brooke Credit with knowledge and intent that the injury would be felt in the State of Kansas, including, without limitation, tortiously soliciting and diverting Brooke Franchise customers, tortiously interfering with Brooke Credit's contractual rights, illegally converting Brooke Credit's collateral, willfully violating the TRO entered by the Phillips County Kansas State Court and violating the Lanham Act.

*Id*.

Brooke Franchise purchases independent insurance agencies and then resells them to franchise agents in conjunction with marketing plans and processing standards. Red Oak was a Brooke Insurance franchisee. Until July 1, 2006, Robert W. Shannon and Robert F. Shannon owned, operated, and acted as agents for Red Oak.

Occasionally, Brooke Credit finances franchisee's purchases of their franchise rights and other assets from Brooke Franchise. In these cases, Brooke Credit retains a security interest in all agency assets, including those that are acquired from Brooke Franchise, until the loan to Brooke Credit is paid in full.

Red Oak acquired certain assets from Brooke Franchise on March 5, 2001 and entered into a Franchise Agreement. Under the Agreement, Brooke Franchise agreed to provide services

and benefits to Red Oak, including: to account for and process customer policies for Red Oak; to provide errors and omissions insurance coverage for Red Oak; to permit Red Oak to make use of Brooke Franchise's trade name, trademarks, logo, service types and promotional materials; to advance certain advertising costs incurred by Red Oak; to provide Red Oak with access to Brooke Franchise's document management system; and to provide various other services to Red Oak.

In return, Red Oak agreed in Section 6(b) of the Agent Agreement Addendum:

> Franchise Agent agrees that it shall not sell, renew or deliver Policies under any agency agreement with Companies for the sale, renewal, service or delivery of Policies except under those agency agreements entered into or pre-approved in writing by [Brooke Franchise]. Franchise Agent agrees that it shall not provide leads, contacts or referrals to Franchise Agent's Affiliates which result in the sale, renewal, service or delivery of Policies under agency agreements other than those entered into by the Master Agent and thereby circumvent the requirements of this paragraph.

Plaintiff's Motion For Leave to File First Amended Complaint, Dkt. 8, Exhibit 2, pg. 6.

Brooke Credit also extended financing to Red Oak for $622,461.00 (the "First Note"); $513,682.75 (the "Second Note"); and $438,020.23 (the "Third Note"). Under the Loan Agreement, Red Oak signed and delivered a security agreement which granted Brooke Credit a first priority lien on Red Oak's personal property, including the agency's assets on June 30, 2001.

On March 31, 2002, Red Oak signed and delivered a second security agreement which granted an additional lien on the collateral to Brooke Credit. The primary collateral which secured the debt included customer lists, customer accounts and the rights to payment accruing therefrom, including the accounts and contract rights, and telephone numbers, customer files, office space, and trade names which are integral to the servicing of the customer accounts.

On June 30, 2001, Robert W. Shannon, Jan L. Shannon, Robert F. Shannon and Darla S. Shannon executed agreements to Brooke Credit which guaranteed the payment and performance of any and all obligations to Brooke Credit owed by Red Oak.

Plaintiff alleges that in the Spring and early Summer of 2006, Robert F. Shannon and Robert W. Shannon enlisted the aid of TAI, and, with TAI's knowledge, encouragement, and active participation, joined TAI and immediately began to move Red Oak customers and diverted premiums and commissions in order to transfer agency assets to TAI.  On July 1, 2006, the Shannons ceased to operate as a Brooke franchisee or as Red Oak.

Plaintiff argues that Robert F. Shannon and Robert W. Shannon planned to move their customers to the competing insurance agency, TAI, for several months.  Plaintiff notes that the Shannons discussed their plan to solicit customers and divert them from Red Oak to TAI with TAI.  Upon joining TAI, Robert F. Shannon and Robert W. Shannon began solicitation and diversion of Red Oak customer accounts to TAI.

Brooke Credit, however, did not learn of the move until September 20, 2006, when a Brooke Franchise employee drove to Red Oak's Fort Worth office and found that Red Oak abandoned the premises.  On October 5, 2006, Brooke Franchise provided Red Oak with notice of termination of the Franchise Agreement.

Brooke Credit also wrote the Shannons and Red Oak to demand repayment of the Red Oak loans and to remind them of their non-solicitation obligations under the Loan Agreement. The Shannons provided a copy of this letter to TAI and to its counsel.  Counsel for the Shannons and for TAI responded to Brooke Credit on October 23, 2006.  The letter acknowledged receipt of Brooke Credit's letter and threatened that the Shannons would declare bankruptcy and sue

Brooke Credit for fraud, breach of contract and other claims, as well as file complaints with the District Attorney, FBI, and FTC if Brooke Credit attempted to collect amounts due on its loans to Red Oak.

Plaintiff also alleges that TAI and the Shannons conducted a mass mailing on Brooke letterhead on October 25, 2006, to Red Oak customers to request that they move their accounts to TAI. Due to this action, Brooke Credit demanded immediate assembly and delivery of its collateral, including the customer accounts and agency assets, as well as the return of collateral delivered to TAI.

The District Court for Phillips County, Kansas entered a temporary restraining order on November 14, 2006, which restrains the Shannons and TAI, and all those acting through them, from soliciting and writing policies for Red Oak's Brooke franchise customers, diverting any of the accounts, or right to payment thereon, from the Brooke franchise or diverting customers from continuing to do business with the Brooke franchise or otherwise diminishing the value of the customer accounts that were part of Brooke Credit's collateral. The TRO further ordered TAI to divest itself of any interest in the collateral and to deliver all of the collateral, irrespective of its location, to Brooke Credit or an agent of its choice.

The present issue for consideration is whether the non-resident defendant, TAI, is subject to personal jurisdiction.

*II.  Standard of Review*:

For purposes of resolving a motion to dismiss, the court must accept as true all well-pleaded facts and view those facts in the light most favorable to plaintiff. *See Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Servs.,* 175 F.3d 848, 855 (10 Cir.1999). The court may

not grant relief "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *GFF Corp. v. Associated Wholesale Grocers,* 130 F.3d 1381, 1384 (10 Cir.1997) *(quoting Conley v. Gibson,* 355 U.S. 41, 45-46, (1957)).

### III. *Conclusions of Law*:

The plaintiff bears the burden of establishing personal jurisdiction over a defendant. *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992). A plaintiff need only make a prima facie showing that jurisdiction exists in order to defeat a motion to dismiss. *Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987). The law of Kansas is used to determine whether the court has personal jurisdiction over a nonresident defendant as it represents "the law of the forum state." *Yarbrough v. Elmer Bunker & Assocs.*, 669 F.2d 614, 616 (10th Cir. 1982). In order to exercise personal jurisdiction over a nonresident defendant, a court must apply a two-part test to ensure that the "exercise of jurisdiction is sanctioned by the long-arm statute of the forum state" and that due process requirements of the Constitution are satisfied. *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1304 (10th Cir. 1994) (citing Fed. R. Civ. P. 4(e)).

For the first requirement, the Kansas long-arm statute provides:

> (1) Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person and, if an individual, the individual's personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of these acts: . . . (2) commission of a tortious act within this state.

K.S.A. § 60-308(b)(2).

Kansas courts have held that Kansas' long-arm jurisdiction is properly invoked under § 60-308(b)(2) where a plaintiff alleges the commission of tortious activity outside Kansas that causes injury within Kansas. *Ling v. Jan's Liquors*, 703 P.2d 731, 734 (Kan. 1985).

The Kansas long-arm statute is construed liberally to allow jurisdiction to the full extent permitted by due process. *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir. 1994). For the second requirement of due process, the "constitutional touchstone" is "whether the defendant purposely established 'minimum contacts' in the forum state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

The "minimum contacts" requirement between the nonresident defendant and the forum state may be satisfied in one of two ways. General jurisdiction exists where "defendant's contacts with the forum state are so 'continuous and systematic' that the state may exercise personal jurisdiction over the defendant, even if the suit is unrelated to the defendant's contact with the state. *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996). Specific jurisdiction exists where the defendant "purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id*. at 1532.

In order to determine whether specific jurisdiction is present, the court must analyze whether the defendant has such minimum contacts within the forum state "that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Additionally, the court must consider whether the exercise of personal jurisdiction offends "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court of Calif., Solano County*, 480 U.S. 102, 113 (1987). With this inquiry, a

court should question whether "exercise of personal jurisdiction over a defendant with minimum contacts is reasonable in light of the circumstances surrounding the case." *Pro Axess, Inc. v. Orlux Distrib'n, Inc.*, 428 F.3d 1270, 1279 (10th Cir. 2005) (quotation omitted).

First, the court finds that TAI's actions meet the Kansas long-arm statute. Plaintiff alleges that TAI engaged in unfair competition under the Lanham act, civil conspiracy, tortious interference and conversion. Additionally, Brooke Credit has alleged that TAI knowingly and intentionally caused it economic injury in Kansas through its conversion of customer accounts and premiums that were to be paid into Kansas and served as Brooke Credit's collateral, as well as its allegedly tortious interference with Brooke Credit's contractual rights and its conspiracy with its employees and Brooke Credit's guarantors, the Shannons, to commit these torts. These actions allegedly caused plaintiff economic injury in Kansas, which satisfy the requirements of the Kansas long-arm statute.

With respect to the due process requirements, defendant primarily argues that the exercise of jurisdiction is unreasonable because defendant TAI does not conduct business in the State of Kansas and insures no risks in the State of Kansas. Defendant also relies on the case of *Brooke Credit Corp. v. Lobell-Dixon Ins. Agency*, LLC, No. 06-2510-CM, 2006 WL 3792108, at *3-4 (D. Kan. Dec. 21, 2006), where the court held that personal jurisdiction did not arise because plaintiff did not demonstrate minimum contacts with Kansas to satisfy the due process analysis. In *Lobell-Dixon*, the plaintiff did not allege that defendant engaged in any business practices in Kansas, but only that defendant received insurance customers from other defendants. *Id*. The court held that "[w]ithout a clear allegation that Lobell Insurance purposely directed its activities towards Kansas, these allegations are not sufficient for Lobell Insurance to anticipate coming to

8

court in Kansas." *Id*. at *3. Furthermore, the court found that conspiracy jurisdiction was also inapplicable because "[p]laintiff's complaint does not include any allegation of conspiracy to commit a business tort." *Id*. at *4.

However, the present case is distinguishable. Unlike the *Lobell-Dixon* case, plaintiff has alleged conspiracy to commit a business tort. *See* Motion for Leave to File First Amended Complaint, Exh. 2, pg. 1. In *Merriman v. Crompton Corp*., 146 P.3d 162 (Kan. 2006), the Kansas Supreme Court held that the theory of conspiracy jurisdiction can be used to satisfy due process considerations. *Id*. at 186. "[A]llegations of a conspiracy to commit a business tort which had foreseeable consequences in Kansas" are sufficient to support a finding of personal jurisdiction over a nonresident defendant. *Professional Investors Life Ins. Co., Inc. v. Roussel*, 528 F. Supp. 391 (D. Kan. 1981). As alleged in the complaint, TAI and its employees, the Shannons, voluntarily conspired to commit, and did commit, tortious interference with contract, conversion of Brooke Credit's collateral and unfair competition under the Lanham Act with the knowledge and intent that Brooke Credit would incur damage in Kansas. Furthermore, the complaint alleges that on October 25, 2006, TAI approved and paid for the Shannons to send a mass mailing, on Brooke letterhead, to hundreds of Red Oak customers to ask them to move their accounts to TAI. The court holds that these actions are consistent with due process considerations in that defendant TAI could reasonably anticipate being haled into a Kansas court based on these allegations. *See World-Wide Volkswagen Corp.,* 444 U.S. at 297.

The exercise of personal jurisdiction over a defendant with minimum contacts is also reasonable in light of the circumstances in the present case. To determine whether the exercise of personal jurisdiction is reasonable, the court considers the following factors: (1) the burden on

the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental social policies.  *Rainy Day Books, Inc. v. Rainy Day Books & Café, L.L.C.*, 186 F. Supp. 2d 1158, 1166.  Unless the inconvenience is so great on defendant to constitute a deprivation of due process, the burden does not overcome the justification for the exercise of jurisdiction.  *Id*.  It is not constitutionally unreasonable to exercise jurisdiction on defendant when Internet communications, faxes, telecommunications, and relatively inexpensive travel are available.  *Id*. at 1166-67.  Additionally, Kansas has an interest in resolving the matter because Brooke Credit is a Kansas corporation, with Kansas employees.  Third, litigating in Kansas is advantageous to the plaintiff because the majority of its witnesses and documents relevant to the issues raised in this matter are located in Kansas.  The remaining two factors are not compelling factors in determining whether personal jurisdiction should be exercised over defendant.  However, in total, the court holds that it is not constitutionally unreasonable to exercise personal jurisdiction over defendant TAI.  Therefore, defendant's motion to dismiss is denied.

      The court also denies defendant's motion to transfer.  The decision whether to grant a party's motion to transfer is within the sound discretion of the district court and the party seeking the transfer bears the burden to demonstrate that transfer is appropriate.  *Snyder Indus., Inc. v. Clawson Container Co.*, 991 F. Supp. 1279, 1283 (D. Kan. 1998).  The court must give great weight to the plaintiff's choice of forum.  *See Allstate Ins. Co. v. Employers Reinsurance Corp.*, 715 F. Supp. 1502 (D. Kan. 1989).  "Unless the balance is strongly in favor of the movant, the

plaintiff's choice of forum should rarely be disturbed." *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992).  Here, most of the plaintiff's witnesses and documents are located in Kansas.  Should the court transfer the case, the inconvenience of litigation would shift the inconvenience to the plaintiff.  *Snyder Industries, Inc.*, 991 F. Supp. at 1283.  Therefore, without more, the court will not transfer the case.

IT IS ACCORDINGLY ORDERED this 30th day of May, 2007, that defendant's motion to dismiss or, in the alternative, to transfer (Dkt. No. 5) is denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE